UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| April Jones, | Civil Action No.: 4:17-cv-02182-RBH |
| Plaintiff, | |
| v. | **ORDER** |
| Tim Ringer, individually and as employee/agent of Wal-Mart Stores, Inc. d/b/a Wal-Mart Store #630; and Wal-Mart Stores, Inc., | |
| Defendants. | |

This matter is before the Court on Plaintiff April Jones' motion to remand. *See* ECF No. 6. The Court grants the motion for the reasons herein.[1]

## **Background**

Plaintiff originally filed this action in state court, alleging she stepped on a rusty nail in Wal-Mart and eventually lost part of her right leg due to multiple surgical amputations. *See* Complaint [ECF No. 1-1]. Plaintiff is a South Carolina citizen, and she named Tim Ringer and Wal-Mart Stores, Inc. as the two defendants (collectively, "Defendants"). *Id.* Ringer is a South Carolina citizen and a manager of the Wal-Mart store in question, while Wal-Mart is a citizen of Delaware and Arkansas.[2] *Id.*; Notice of Removal [ECF No. 1].

Defendants removed the action to this Court based on federal diversity jurisdiction, asserting

---

[1] Pursuant to Local Civil Rule 7.08, the district court may decide motions without a hearing. The Court has reviewed the parties' filings and determined a hearing in this matter is unnecessary.

[2] Defendants assert Wal-Mart Stores East, L.P.—not Wal-Mart Stores, Inc.—is the sole proper corporate defendant. *See* ECF No. 1. at p. 2; ECF No. 9 at p. 1 n.1. However, because both these entities are citizens of Delaware and Arkansas, *see* ECF No. 1. at pp. 2–3, the Court will simply use "Wal-Mart" to refer to the corporate defendant.

Plaintiff fraudulently joined Ringer to defeat diversity. *See* ECF No. 1. Plaintiff filed the instant motion to remand, and Defendants filed a response in opposition. *See* ECF Nos. 6 & 9. Plaintiff did not file a reply.

### **Legal Standards**

The party seeking to remove a case to federal court has the burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Thus, Defendants bear the burden to establish federal jurisdiction is proper in this case. "Because removal jurisdiction raises significant federalism concerns," the Court "must strictly construe removal jurisdiction. If federal jurisdiction is doubtful, a remand is necessary." *Id.* (internal citation omitted).

Title 28 U.S.C. § 1332(a)(1) grants district courts original jurisdiction of any civil action for which the matter in controversy exceeds $75,000 and is between or among citizens of different states. This statute requires *complete* diversity of citizenship, meaning the plaintiff cannot be a citizen of the same state as any defendant. *Carden v. Arkoma Associates*, 494 U.S. 185, 187 (1990). Thus, diversity jurisdiction exists "so long as any two adverse parties are not co-citizens." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 n.3 (1996). State court defendants may remove a civil action to federal district court if the district court has original subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). If the district court determines at any time before entering final judgment that it lacks subject matter jurisdiction over a removed action, it must remand the action to state court. 28 U.S.C. § 1447(c).

Although complete diversity is necessary for a federal court to exercise diversity jurisdiction, the fraudulent joinder doctrine prohibits a plaintiff from automatically defeating diversity jurisdiction by naming non-diverse defendants. *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218 (4th Cir. 2015). The fraudulent joinder doctrine enables a district court to "'disregard, for jurisdictional purposes, the

citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)).

> 'Fraudulent joinder' is a term of art, it does not reflect on the integrity of [the] plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or *in fact* no cause of action exists. In other words, a joinder is fraudulent if there [is] no real intention to get a joint judgment, and . . . there [is] no colorable ground for so claiming.

*AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (alterations and omission in original) (internal quotation marks omitted).

"The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Id.* The Fourth Circuit has recognized two methods by which a defendant may show fraudulent joinder: (1) there is "outright fraud in the plaintiff's pleading of jurisdictional facts"; or (2) "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Johnson*, 781 F.3d at 704. "To defeat an allegation of fraudulent joinder, the plaintiff need establish 'only a slight possibility of a right to relief.'" *Hughes v. Wells Fargo Bank, N.A.*, 617 F. App'x 261, 264 (4th Cir. 2015) (quoting *Mayes*, 198 F.3d at 464). In evaluating whether an attempted joinder is fraudulent, a court is not bound by the allegations of the complaint but can "consider the entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464.

## **Discussion**

3

Plaintiff moves to remand this case to state court, arguing (1) there is not complete diversity because she and Ringer are both South Carolina citizens and (2) Ringer is a proper defendant because South Carolina recognizes joint and several liability. *See* ECF No. 6. Meanwhile, Defendants argue Ringer—the store manager for Wal-Mart—has been fraudulently joined as a sham defendant to defeat diversity jurisdiction. *See* ECF No. 9. Defendants argue Plaintiff has no possibility of establishing a cause of action against Ringer.[3] *Id.* at p. 3.

In her complaint, Plaintiff alleges that on June 26, 2015, she went grocery shopping in Wal-Mart Store #630 in Florence, South Carolina and passed through an area containing pallets. Compl. at ¶¶ 6, 9–10. She began to feel pain in her right foot while hearing a scraping sound under her shoe, and upon looking under her shoe, she saw a rusty nail had pierced through both the shoe and her foot. *Id.* at ¶¶ 10–11. Plaintiff reported the incident to Defendants and visited the hospital. *Id.* at ¶¶ 12, 15. She had to have a hole cut in her foot to treat the wound, which led to multiple surgical amputations that eventually resulted in the loss of her right leg up to just above her knee. *Id.* at ¶ 15. She alleges that at the time of the incident, Ringer was acting as a manager of Wal-Mart Store #630 and was responsible for cleaning, monitoring, and maintaining the store premises to ensure they were safe, clean, and not dangerous for customers. *Id.* at ¶¶ 7–8. Plaintiff sues Defendants for negligence under a theory of premises liability, alleging Defendants created the dangerous condition or knew (or should have known) the floor area where her injuries occurred presented a danger to patrons of Wal-Mart. *Id.* at ¶ 14. In particular, Plaintiff seeks to hold Ringer jointly liable for her injuries.

Defendants argue Ringer did not owe a duty to Plaintiff because he was merely a store *manager*

---

[3] Defendants do not argue there was any "outright fraud" in Plaintiff's pleading of jurisdictional facts. *See Johnson*, 781 F.3d at 704.

and not a store *owner*. ECF No. 9 at pp. 4–13. Defendants correctly acknowledge that the undersigned and another judge in this district have determined store managers may owe such a duty—one case even involving a Wal-Mart store manager. *Id.* at pp. 5–8, 13. These cases are: *Griggs v. Dollar General Corp.*, No. 4:15-cv-04600-RBH, 2016 WL 70017 (D.S.C. Jan. 6, 2016); *Cook v. Lowe's Home Centers, Inc.*, No. 5:06-cv-02130-RBH, 2006 WL 3098773 (D.S.C. Oct. 30, 2006); and *Mobley v. Wal-Mart Stores, Inc.*, No. 2:09-cv-03019-DCN, 2010 WL 503101 (D.S.C. Feb. 8, 2010).[4] Defendants also correctly note *Griggs*, *Cook*, and *Mobley* rely in part on two decisions by the South Carolina Supreme Court: *Richards v. Great Atlantic & Pacific Tea Co.*, 226 S.C. 119, 83 S.E.2d 917 (1954); and *Dunbar v. Charleston & W. C. Ry. Co.*, 211 S.C. 209, 44 S.E.2d 314 (1947). ECF No. 9 at p. 5. Defendants then argue "a closer look at these cases reveals" the South Carolina Supreme Court "never intended to expand premises liability in the manner in which Plaintiff asks the Court to do so in the present action, *i.e.*, under a theory of 'control.'" *Id.* In essence, Defendants argue *Griggs*, *Cook*, and *Mobley* misinterpreted *Richards* and *Dunbar* to conclude store managers (and not just owners) can be sued under a theory of premises liability, a result never actually intended by the state supreme court. *See id.* at p. 8. The Court disagrees.

Without unnecessarily repeating the legal principles explained in *Griggs*, *Cook*, and *Mobley*, the Court reiterates its prior determination that "a store manager can be held personally and jointly liable with the store itself for an alleged act of negligence," *Griggs*, 2016 WL 70017, at *4, under "the South Carolina common law of joint and several liability, and the fact that a store manager by virtue of his position has a high level of control over the store." *Cook*, 2006 WL 3098773, at *4. Moreover, "[t]he decisions of the Supreme Court of South Carolina make perfectly plain that in South Carolina a plaintiff

---

[4] Plaintiff relies on *Cook* and *Mobley* in her motion to remand. *See* ECF No. 6 at pp. 6–7.

5

suing a master and servant for injuries which he has sustained as a result of the negligence of the servant, within the scope of his employment, may bring a suit against master and servant, and join them as joint tortfeasors. It is useless to re-cite and re-discuss the long line of cases . . . ." *Newton v. S. Grocery Stores*, 16 F. Supp. 164, 165–66 (E.D.S.C. 1936) (finding no fraudulent joinder where two resident store managers were joined as defendants with the non-resident grocery store; and remanding the case to state court).[5] "Pursuant to this concept of joint and several liability, South Carolina law

---

[5] Again, Defendants contend the undersigned and Judge Norton (in *Griggs*, *Cook*, and *Mobley*) erroneously construed *Dunbar* and *Richards* "to expand premises liability" and "permit plaintiffs to name a store manager as a defendant," claiming "the state supreme court never intended" such a result. ECF No. 9 at p. 5. Defendants further rely on the principles of agency and vicarious liability to argue that "store managers . . . are agents of the store" and should not face personal liability as such. *See id.* at pp. 10–13.

However, over a decade before *Dunbar* (a 1947 opinion) and *Richards* (a 1954 opinion), U.S. District Judge John Lyles Glenn, Jr. had aptly observed in *Newton* (a 1936 order) that the South Carolina Supreme Court's decisions "make perfectly plain that" a plaintiff "may bring a suit against master and servant, and join them as joint tortfeasors." *Newton*, 16 F. Supp. at 165–66. In fact, as indicated above, *Newton* involved a fraudulent joinder issue where a plaintiff sued a grocery store (a Delaware corporation) and two store managers (South Carolina residents) who were "manager of the grocery store and . . . manager of the market operated in conjunction therewith" and "were the agents of the defendant corporation, Southern Grocery Stores, Inc., ***in active charge, control and direction thereof***." *Id.* at 165 (emphasis added). Judge Glenn found no fraudulent joinder and remanded the case to state court, stating:

> The fact that the negligence alleged against the defendant master may arise entirely out of the negligence of the servants who are also joined as defendants, and the fact that the liability of the master may depend entirely upon the application of respondeat superior, do not prevent the suit from being, under the laws of South Carolina governing the pleadings, a suit for recovery against master and servant alike on the theory of joint tort, and justifying, so far as pleadings are concerned, a recovery against them both in one action. . . .
>
> We think that on its face the complaint alleges sufficiently that the injuries complained of were the result of joint and concurrent negligence on the part of the master and the two servants joined as defendants. . . . [H]owever, . . . the court must look at the allegations of the complaint, the allegations of the petition for removal, the affidavits filed on the hearing, and, if the parties present testimony, this too must be considered, in deciding whether or not the joinder of the resident defendant in such a case is a pure sham and fraud, or whether or not there is in the factual situation, as reasonably pictured by the court, any reasonable basis for joining the resident defendants as defendants along with the nonresident master. . . .
>
> So here we come to the crux of the instant motion, and must rest our decision on the question of whether or not the two resident defendants here, Joye and Johnson, or either one of them, owed, under the allegations of the complaint, reasonably understood and read in the light of the other pleadings presented, any

permits store managers to be sued in tort for injuries to the store's invitees." *Owens v. Dolgencorp, Inc.*, No. 5:08-cv-00467-MBS, 2008 WL 11348726, at *2 (D.S.C. Oct. 22, 2008). The Court further notes a Wal-Mart store manager has specifically been found not to be a sham defendant. *See Mobley*, 2010 WL 503101, at *5. Of course, the facts unique to each case will govern whether a particular store manager can actually be held liable. *See Benjamin v. Wal-Mart Stores, Inc.*, 413 F. Supp. 2d 652, 657 (D.S.C. 2006) ("[M]erely being a manager or employee does not evidence a sufficient level of control.").

Thus, the last task for the Court is to determine whether there is any possibility that Plaintiff can establish a cause of action against Ringer in state court. If so, this case must be remanded.

When a single injury occurs as the proximate result of separate and independent acts of the negligence of two or more parties, these tortfeasors are subject to joint and several liability. *Collins v. Bisson Moving & Storage, Inc.*, 332 S.C. 290, 306, 504 S.E.2d 347, 356 (Ct. App. 1998) (citing *Rourk*

---

> duties to the plaintiff which are alleged to have been violated and resulted, along with the negligence of the master, in the injury of the plaintiff. As was so well stated by one of the great judges of the South Carolina Supreme Court, the servant does not escape liability for his own negligence by reason of the fact that his master (generally more responsive to a judgment) can also be held liable by reason of the doctrine of respondeat superior for the damages sustained by the plaintiff. The Southern Grocery Stores, though chartered in Delaware, has its main southern office in Atlanta, Ga. All it has in Bennettsville is a store, and the two resident defendants here are charged with the operation of this store. Southern Grocery Stores, Inc., is, of course, liable for their conduct, within the scope of their employment, to any one injured by reason of the negligence of these two men alleged to be in charge of the major departments of this store. Are they also liable, personally and individually, for damages sustained by the plaintiff as a result of their negligence while about their master's business? We think so. A man does not escape from his individual duty to treat with proper care the persons with whom he needs must come in contact in order to carry on the business for a master, and for carrying on of which business he, the servant, receives compensation which he deems to be commensurate with the service that he renders.

*Id.* at 166–67. In sum, the decisions in *Griggs*, *Cook*, and *Mobley* simply adhere to the longstanding law of South Carolina governing joint tortfeasors; they did not create any new law.

*v. Selvey*, 252 S.C. 25, 27–28, 164 S.E.2d 909, 910 (1968)). Plaintiff has the right to name whom she sues; and in this case, she has properly named Ringer as one of the parties that is, potentially, jointly responsible for her injuries.[6]

To establish a negligence claim against Ringer, Plaintiff must show he owed her a legal duty, breached that duty, and proximately caused damages to her as a result of that breach. *See Lord v. D & J Enterprises, Inc.*, 407 S.C. 544, 558, 757 S.E.2d 695, 702 (2014). Whether the law recognizes a particular duty is a matter of law to be decided by the Court. *Doe ex rel. Doe v. Wal-Mart Stores, Inc.*, 393 S.C. 240, 246, 711 S.E.2d 908, 911 (2011). Although the common law ordinarily imposes no duty to act, an affirmative legal duty may arise from statute, contract, relationship, property interest, or other special circumstance. *Cowburn v. Leventis*, 366 S.C. 20, 46, 619 S.E.2d 437, 451 (Ct. App. 2005).

In South Carolina, a merchant owes customers a duty of ordinary care to maintain parts of the store ordinarily used by customers in a reasonably safe condition, and the merchant is liable for any injury resulting from a breach of this duty. *Richardson v. Piggly Wiggly Cent., Inc.*, 404 S.C. 231, 234, 743 S.E.2d 858, 859–60 (Ct. App. 2013). "Although a merchant is not an insurer of the safety of his customers, he owes a duty to keep aisles and passageways in a reasonably safe condition." *Wintersteen v. Food Lion, Inc.*, 344 S.C. 32, 36, 542 S.E.2d 728, 730 (2001) (internal citation omitted).

A person who operates a commercial establishment but is neither an owner nor a lessee may nonetheless have a duty to exercise reasonable care to remedy an allegedly dangerous condition.

---

[6] *See generally Richards*, 226 S.C. at 126–27, 83 S.E.2d at 920–21 ("When a plaintiff joins two or more alleged wrongdoers as parties defendant in one action, such joinder in itself necessarily implies that he has elected to treat his injury as a joint tort, and to recover upon the theory of joint liability. Such election to sue upon the theory of joint liability logically involves the relinquishment of the right in that action to raise a 'separable controversy' with any one defendant and to recover against one or more separately upon the theory of several liability in any sense other than that the plaintiff in such joint action is not bound to recover against all, but may recover[] against one or more and not against others." (emphasis removed)).

8

*Benjamin*, 413 F. Supp. 2d at 655 (citing *Dunbar*, 44 S.E.2d at 317). Liability in such a situation depends upon *control* of the premises, not necessarily ownership. *See Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997); *Nesbitt v. Lewis*, 335 S.C. 441, 446, 517 S.E.2d 11, 14 (Ct. App. 1999). When evaluating whether a person has sufficient control—and thus a duty to inspect the premises for dangerous conditions—a court should consider the person's power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee the management of the property. *Benjamin*, 413 F. Supp. 2d at 655–56 (citing C.J.S. *Negligence* § 388).

Here, Plaintiff alleges Ringer was "acting as a manager of Wal-Mart Store #630," and that "[a]s manager, Defendant Ringer's responsibilities and duties include, but are not limited to, cleaning, monitoring, and maintaining the premises of Wal-Mart Store #630 to ensure that it is safe, clean, and not dangerous for customers, patrons, and invitees." Compl. at ¶¶ 7–8. Plaintiff further alleges that "due to the negligence of Defendants"—who include Ringer—she stepped on a rusty nail while she was in an area where pallets were located and suffered severe injuries eventually leading to the amputation of half her right leg. *Id.* at ¶¶ 10–11, 13, 15. She also alleges that "Defendants"—who include Ringer—"either knew or should have known that the floor area where Plaintiff's injuries were initiated presented a danger to patrons of Defendant's store, or that Defendant created the dangerous condition." *Id.* at ¶ 14. These allegations indicate Ringer, by virtue of his position as a manager, had a sufficient degree of control over the Wal-Mart store such that he had a duty to reasonably inspect the area where the pallets and rusty nail were located.

Besides the allegations indicating Ringer owed a duty to Wal-Mart customers such as Plaintiff, the complaint also contains allegations that Ringer breached his duty and proximately caused Plaintiff's injuries as a result of the breach. *See id.* at ¶¶ 16–18. Specifically, Plaintiff's allegations suggest she

9

would not have stepped on the rusty nail but for Ringer's failure to inspect the area where it was located. Accordingly, the Court finds there is a possibility that Plaintiff can establish a negligence claim against Ringer in state court.[7]

Having "resolv[ed] all issues of law and fact in [P]laintiff's favor," *Hartley*, 187 F.3d at 424, the Court finds Defendants cannot meet the heavy burden of showing Plaintiff has no possibility of maintaining a negligence claim against Ringer. In so finding, the Court is mindful that the fraudulent joinder standard is more favorable to Plaintiff than the Rule 12(b)(6) standard. The Court is also mindful that any doubt as to jurisdiction should be resolved in favor of remand, which is necessary in this case. Regarding Plaintiff's motion for remand, the Court notes the only basis for removal was diversity jurisdiction. The proper naming of Ringer as a defendant has destroyed complete diversity of citizenship. Because the Court lacks jurisdiction over Plaintiff's claims, the Court must grant her motion and remand this case to state court.

## Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to remand [ECF No. 6] and **REMANDS** this case to the Court of Common Pleas for Florence County, South Carolina, for further proceedings. The Court **DIRECTS** the Clerk to mail a certified copy of this Order to the clerk of the Florence County Court of Common Pleas.

**IT IS SO ORDERED.**

Florence, South Carolina  
November 6, 2017

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge

---

[7] Of course, the Court makes no finding as to Ringer's liability and expresses no opinion on the merits of Plaintiff's claims.